IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW T. MURPHY,

                                Plaintiff,                          OPINION & ORDER

    v.

                                                                             13-cv-642-jdp

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,

                                Defendant.

---

Plaintiff Andrew T. Murphy works as a financial specialist at the University of Wisconsin-Madison. He applied for a higher-level position as an accountant, but the position went to a female candidate. He contends that the successful candidate was less qualified and that UW-Madison discriminated against him because of his sex.

Defendant Board of Regents, which governs the University of Wisconsin System including UW-Madison, has moved for summary judgment. Dkt. 12. The court will grant the motion. As a man, Murphy faces an uphill battle to establish a prima facie case of discrimination, which would require him to show that UW-Madison has a reason or an inclination to discriminate against men. He does not make this showing. Also, he cannot rebut defendant's legitimate, non-discriminatory reason for its decision, which is that although Murphy has an impressive education, the successful candidate performed better in the interview and had more relevant experience administering NIH grants, an important part of the position that Murphy sought. Ultimately, he has simply not adduced evidence to support an inference that he did not get the job because he is male.

UNDISPUTED FACTS

The following facts are, except where noted, undisputed.

Plaintiff is highly educated. His bachelor's and master's degrees in botany led him to the University of Wisconsin-Madison, one of the schools administered by defendant Board of Regents, where he studied and worked as a research assistant in the Department of Agronomy. He lost funding for his research before finishing his doctorate, so he changed course and pursued a master's degree in business administration at UW-Madison. After receiving his MBA, plaintiff worked in the private sector for about seven years performing statistical work and was the sole worker in his employer's finance office.

In 1997, plaintiff returned to UW-Madison to work, first in the Sea Grant Institute as a Financial Specialist 1. In this position, which he held for two years, plaintiff was involved with post-award grant management and auditing others' work. His next positions, which he held for a combined six years, were as a Financial Specialist 3 and an accountant in the School of Music. There, plaintiff handled financial transactions and was involved in limited post-award grant management. He also worked independently to improve the School of Music's financial systems. Plaintiff obtained his certified public accountant (CPA) license during this time.

In 2005, plaintiff was hired by UW-Madison's School of Medicine and Public Health (SMPH). The SMPH has several departments. Plaintiff started in the Department of Medicine as an Accountant-Journey and was later promoted to a Financial Program Supervisor. In these positions, plaintiff managed grants in the post-award stage. Approximately 90% of grant funds received by the Department of Medicine were spent on salary and benefits, so plaintiff supervised the employees responsible for payroll. In addition to managing fiscal staff and annual salary budgets, plaintiff worked to improve policies and practices in the department. For example, he helped develop accounting software and cost transfer processes.

Plaintiff was laid off in 2009, but he voluntarily accepted a demotion into a Financial

Specialist 3 position in a different department in SMPH, the Office of Clinical Trials (OCT). As a consequence of his voluntary demotion, plaintiff received "restoration" rights for three years pursuant to Wisconsin's civil service system. This meant that plaintiff had the right to be recalled to positions similar to the one from which he had been laid off, if he applied and he were qualified to perform the work after the customary orientation provided to new employees. Plaintiff had applied for several positions as a restoration candidate, but he was not selected. Plaintiff remains a Financial Specialist 3 in the OCT, where he performs hands-on work with invoices, databases, reports for billing staff time, revenue allocation, and financial activity.

In 2011, plaintiff applied as a restoration candidate for an Accountant position in Population Health Services (PHS), another SMPH department, overseen by Dr. F. Javier Nieto. The position did not require a specific level of formal education or professional certification, although it required "professional training in accounting, such as that which would be acquired by earning a Bachelor's Degree in accounting or auditing." In addition to the formal position requirements, PHS was looking for a detail-oriented, hands-on person with the initiative and skills to effectively manage grant accounts. The new hire would work closely with the Research Manager on pre-award and post-award grant management, requiring someone who would take direction well and apply new skills quickly. This person would manage a considerable number of state contracts, experience that plaintiff did not have.

PHS Department Administrator Deanna Moore and Research Manager Tom Lochner interviewed plaintiff for the PHS Accountant position in December 2011. This was not the first time Moore had interviewed plaintiff. As Department Administrator for the last 14 years, Moore often interviewed job candidates, contacted employment references, and selected candidates for administrative positions. Moore had previously interviewed plaintiff for the Research Manager position in 2008 or 2009, but he did not get the job. Moore recalled that her

3

decision was informed in part by "negative employment reference feedback," although she did not remember details. Dkt. 21 (Moore Dep. 22:8-23:18).

Plaintiff did not fare well at his interview for the PHS Accountant position. He challenges this assessment by contending that he "answered all questions presented to him" and believes that he satisfactorily articulated his qualifications and experience. Dkt. 26, at 18-20. But Moore's contemporaneous notes concerning plaintiff's interview raised serious questions about his ability to manage PHS's grants. In addition to having very little experience with pre-award grant management, plaintiff could provide few details about his process for managing research grants in the post-award stage even though he had ample experience in that area. Moore was concerned by plaintiff's inability to describe in detail his experience managing large grants and, if hired, how he would handle grant management at PHS. Plaintiff also had no experience with submitting grant proposals to the National Institute of Health (NIH).

Moore decided to contact Darlene Wood and Camille Hogan to find out more about plaintiff, even though he had not listed them as references. It was common practice for Moore to contact people other than the references provided by an internal applicant, and Moore had sought feedback from Wood and Hogan before. They worked in Fiscal Affairs, a SMPH department consisting of accountants and financial specialists who often interact with the other departments' accountants and financial personnel. For example, Fiscal Affairs employees review and approve transactions that were processed by other departments, and they frequently work with other departments to resolve account issues. Thus, the new PHS accountant would have to work with Fiscal Affairs personnel. Plaintiff had already worked regularly with Fiscal Affairs personnel during his career at UW-Madison. He had done considerable work with Wood, the fiscal supervisor. And Hogan was the accountant liaison with PHS; to achieve success, the new PHS accountant would have to work well with Hogan. Wood and Hogan both thought that

4

plaintiff would not be a good fit for the position. Based on their experience working with plaintiff, they reported that he was not detail-oriented, that he delegated excessively, and that he lacked initiative to perform well or improve processes. They believed that plaintiff was better suited for a position with close supervision, rather than one that required independence and initiative. Although plaintiff acknowledges that Wood and Hogan were not lying about their assessment of his performance, he thinks that they were mistaken because they misunderstood the nature of his job.

    The lackluster interview and negative feedback from Wood and Hogan led Moore to believe that plaintiff would not succeed in the position, even after the customary orientation provided to new employees. Plaintiff disagrees with her assessment, though he does not dispute that this is what she truly believed. After deliberating and deciding not to offer the job to plaintiff, Moore and Lochner submitted a memo to SMPH human resources stating:

> Murphy's potential fit for the position would be more compelling if there was ample evidence that he was detail oriented and naturally took initiative to learn and master complex tasks he's not familiar with, to ask questions, and to work successfully in an independent manner. However, based on information received during this process, I do not believe these to be attributes held by Murphy. After consideration of the above information, we did not find Murphy to be a suitable candidate for this position.

Dkt. 15-6, at 3. However, the decision not to hire plaintiff got a second look because the SMPH considered using the PHS accountant job as part of a potential settlement agreement with plaintiff, who had filed grievances based on rejections for other jobs. Moore opposed plaintiff's selection despite these circumstances, and she communicated her opinion to PHS department chair Dr. Nieto, SMPH associate dean Elizabeth Bolt, and a SMPH human resources manager. There is evidence that Dr. Nieto (male), Bolt, and SMPH dean Dr. Robert Golden (male) all participated in the decision that PHS would not be hire plaintiff, but the parties treat Moore as

5

the primary decision-maker.

Moore and SMPH human resources prepared and sent a rejection letter to plaintiff, which stated that his "knowledge, skills and experience of complex NIH research grants, NIH grants policies and procedures does not rise to the level needed to perform this position's duties after the 'customary orientation' is provided." Dkt. 15-8. Moore would have included additional information about plaintiff's negative references, but SMPH human resources declined to revise the letter.

Moore continued searching for a new PHS accountant. Four additional applicants were interviewed, and female Kara Melka was hired. Melka had approximately 10 years of experience with accounting, auditing, and project management. At the time of her interview, Melka was working in fiscal affairs within SMPH. She had been rapidly promoted to a Financial Specialist 4 after one year as a Financial Specialist 3. Moore believed that Melka was very familiar with UW-Madison's financial systems, policies, and procedures, and that she was capable of tackling and grasping complex work. Moore's positive assessment was confirmed by Wood and Hogan, as well Fiscal Affairs employee Mark McClintock. Melka received positive recommendations which described her as: energetic; a quick learner; smart; resourceful; responsive; versatile; skilled at decision-making and prioritizing; personable; adaptable; independent; eager; upbeat; motivated; having good judgment; reliable; productive; thorough; efficient; open to feedback; a hard-worker, organized; asking appropriate questions; and knowledgeable.

Melka has since left the PHS accountant position and she replaced by a woman. Lochner also left PHS, and Moore hired a male to replace him. Plaintiff contends that he experienced discrimination, but he has never heard anyone at UW-Madison or PHS say anything discriminatory about him or another male. He is not aware of any other instances in which the SMPH discriminated against men.

ANALYSIS

Plaintiff brings a claim under Title VII of the Civil Rights Act, contending that defendant discriminated against him because of his sex when it hired a woman instead of him for the PHS accountant position. This court thus has federal question jurisdiction under 28 U.S.C. § 1331.

Before turning to the merits of plaintiff's sex discrimination claim, the court addresses two preliminary matters. First, plaintiff initially brought suit against both the Board of Regents of the University of Wisconsin System and UW-Madison. He has agreed to dismiss UW-Madison from the lawsuit because it is not a suable entity. Dkt. 25, at 2, and Dkt. 26, at 33. Second, plaintiff initially claimed that defendants also violated the Age Discrimination in Employment Act (ADEA). But plaintiff makes no response to defendants' argument that his ADEA claim is barred by sovereign immunity. Accordingly, the court will deem plaintiff to have forfeited his ADEA claim.

Summary judgment is appropriate if defendant shows that "there is no genuine dispute as to any material fact and [it is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on defendant's motion for summary judgment, the court views all facts and draws all reasonable inferences in the light most favorable to plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.* at 248.

This is a discrimination case. Plaintiff's "restoration" rights under Wisconsin civil service law are of no consequence here because he does not allege that defendant has violated his rights under Wisconsin law. He brings only a discrimination claim under Title VII, which makes it unlawful for an employer to fail or refuse to hire an individual because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing a Title VII claim can defeat a defendant's motion

7

for summary judgment under the direct method of proof or the indirect method of proof. *Darchak v. City of Chi. Bd. of Educ.,* 580 F.3d 622, 630 (7th Cir. 2009). Plaintiff attempts to proceed under both methods.

A. **Direct method of proof**

To withstand summary judgment using the direct method of proof, plaintiff must show through direct or circumstantial evidence that there are "triable issues as to whether discrimination motivated the adverse employment action." *Darchak*, 580 F.3d at 631 (quoting *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1114 (7th Cir. 2009)) (citation omitted). Direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000). Because such admissions are rare, plaintiff may also "prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Ill. Dept. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994)). Circumstantial evidence might include: (1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Tank v. T–Mobile USA, Inc.,* 758 F.3d 800, 805 (7th Cir. 2014).

Plaintiff has no direct evidence, but he offers the following as circumstantial evidence:

(1) the rejection letter did not describe Moore's true reasons for not hiring plaintiff and did not explain why a "customary orientation" would not cure plaintiff's perceived deficiencies;

    (2) Moore cannot remember specific "negative employment reference feedback" from plaintiff's 2008 or 2009 application for PHS's Research Manager position, relying instead on assumptions and inferences that the source did not have positive things to say;

    (3) plaintiff, who was qualified for the position, was rejected in favor of a female employee with dramatically less education and experience;

    (4) Moore's concerns about plaintiff's qualifications were honest, but unreasonable; and

    (5) Moore could have contacted plaintiff's listed references, who were recent supervisors, but instead departed from her usual procedure by contacting Wood and Hogan and not corroborating their feedback.

Dkt. 25, at 7-13. Plaintiff contends that this evidence creates a "convincing mosaic" that would allow a jury to infer intentional discrimination. Plaintiff's evidence does not add up to a convincing mosaic.

    The fundamental problem for plaintiff is that none of these five contentions suggest a discriminatory reason for not selecting him for the job. *Jordan v. City of Gary,* 396 F.3d 825, 832 (7th Cir. 2005) (stating that circumstantial evidence "must point directly to a discriminatory reason for the employer's action"). Moore's reference to previous negative feedback and her decision to contact Wood and Hogan simply do not point to a discriminatory motive. Plaintiff offers no evidentiary support for his argument that Moore departed from her typical hiring process or that she did so for reasons relating to sex discrimination. The undisputed facts show that Moore commonly reached out to people other than the references provided by an internal applicant, and that Moore had previously relied on Wood and Hogan. Wood and Hogan were familiar with plaintiff's work and would have had to work with plaintiff if he had been selected for the position. Plaintiff acknowledges that Wood and Hogan honestly believed that their negative feedback was accurate and that Moore honestly believed that plaintiff would not

9

succeed in the position based on the information she had gathered.

Plaintiff contends that Moore changed her story about her motives for not hiring plaintiff, and that such a change is evidence of a malevolent motive. But the evidence does not support plaintiff's contention that Moore changed her story. The evidence shows only that the rejection letter did not include all the reasons Moore had for not hiring plaintiff. There is nothing in these facts that demonstrates that Moore ever took steps to conceal her true reasons for not hiring plaintiff.

Although plaintiff does not quite put it this way, he seems to argue that he was so clearly a superior candidate compared to Melka that only an improper motive could have explained Moore's choice. *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1180 (7th Cir. 2002). But this argument is not supported by the record. Plaintiff had more formal education than Melka, and he had a profession certification, a CPA, that Melka lacked. But these were not credentials required for the job. Melka had 10 years of accounting experience, and she had pertinent experience with grants management. Most important, she performed well in the interview and had excellent references, contrasting sharply with plaintiff. Plaintiff apparently feels that the evaluations Moore reviewed were somehow unjustified, and that she should have looked for more information favorable to plaintiff. But he has adduced no evidence to dispute that Moore sincerely believed that Melka would do a better job, and that she had ample information to justify her belief.

Ultimately, plaintiff has no evidence that discrimination motivated defendant's decision. Plaintiff's opinion that he was the better candidate does not point "directly to a discriminatory reason for the employer's action," but to a myriad of possible considerations, such as differences in experience and other skills in context of the characteristics valued most by defendant, *see Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012), and it raises a question as to the

10

accuracy of plaintiff's self-assessment. Plaintiff does not show that he was clearly better qualified for the position than Melka. The court concludes that plaintiff has failed to adduce sufficient evidence to proceed via the direct method of proof.

**B. Indirect method of proof**

Plaintiff can attempt to create a triable issue of fact as to whether he was discriminated against on the basis of his sex through the familiar burden-shifting method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* framework, plaintiff must first establish a prima facie case of discrimination. *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir. 1998). If plaintiff demonstrates a prima facie case, there is a presumption of discrimination, and the burden shifts to defendant who must articulate a legitimate, nondiscriminatory reason for not hiring plaintiff. *Id.* If defendant provides such a reason, the burden then shifts back to plaintiff to prove that defendant's stated reason is a mere pretext for discrimination. *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 806–07 (7th Cir. 1999). The Seventh Circuit has determined that pretext means a phony reason for the employer's actions. *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 983 (7th Cir. 1999). "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Farrell v. Butler Univ.,* 421 F.3d 609, 613 (7th Cir. 2005).

**1. Prima facie case**

To establish a prima facie case of discrimination, plaintiff must show that: (1) he was a member of a protected class; (2) he applied and was qualified for an open position; (3) he was rejected; and (4) defendant filled the position with a person not in plaintiff's protected class. *See*

*Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 724 (7th Cir. 2005). Plaintiff must meet an additional burden because he is a man. The *McDonnell Douglas* prima facie case is modified in so-called reverse discrimination cases because it "is the unusual employer who discriminates against majority employees." *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999). In reverse discrimination cases, the first element becomes a non-issue and the courts must be flexible in applying the indirect method of proving discrimination. *Gore v. Ind. Univ.* 416 F.3d 590, 592-93 (7th Cir. 2005). "[A]dditional steps are needed before an inference of reverse-discrimination can be drawn." *Id.* at 593. To meet the first prong of the prima facie case, plaintiff must show "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand." *Id.* at 592 (quoting *Phelan v. City of Chi.*, 347 F.3d 679, 684 (7th Cir. 2003)). In *Gore,* the Seventh Circuit used this "background circumstances" requirement to determine that the plaintiff's Title VII claim failed because the plaintiff had not shown that there was anything "suspicious" about the defendant's decision not to hire him. *See* 416 F.3d at 593. Here, too, plaintiff fails to show that there was anything suspicious about his rejection.

Whether sufficient background circumstances exist to give rise to an inference that defendant is an unusual employer who discriminates against men is a fact-based inquiry. *Mills,* 171 F.3d at 455. Indeed, the Seventh Circuit has noted that "[t]he contours of what constitutes a background circumstance are not precise." *Id.* The *Mills* court provided a variety of factual situations that, if supported by plaintiff's evidence, would support a finding of an inference of discrimination. For example, departing from the usual hiring procedures in an "unprecedented fashion" or passing over white candidates in promotion decisions despite their superior qualifications were adequate showings that something was "fishy." *Id.* (citing *Harding v. Gray*,

12

9 F.3d 150, 154 (D.C. Cir. 1993)). Similarly, if the person ultimately hired was clearly less qualified than the plaintiff, the hiring authority expressed intense interest in hiring a woman, and there was a pattern of hiring women in the past, a male plaintiff could establish "background circumstances." *Id.* These examples "support[ed] an inference that the defendant is one of those unusual employers who discriminates against the majority," and thus shifted the burden of production to the defendant to articulate a legitimate reason for its employment action. *Id.*

The Seventh Circuit has identified two situations in which it is "plausible to expect that men might discriminate against men and in favor of women." *Preston v. Wis. Health Fund,* 397 F.3d 539, 542 (7th Cir. 2005). These include where the "men running the company are under pressure from affirmative action plans, customers, public opinion, the EEOC, a judicial decree, or corporate superiors imbued with belief in 'diversity' to increase the proportion of women in the company's workforce" and where the men running the company are fixated on a stereotype for jobs that are traditional "women's work." *Id.* When a plaintiff does not present any reason why men might be expected to discriminate against other men, the plaintiff must go beyond the "bare fact that a woman got a job that a man wanted to get" to raise a triable issue of discrimination. *Id.*

Here, plaintiff cannot show such background circumstances. Plaintiff contends that there is a pattern of hiring women into the PHS accountant position. Dkt. 25, at 15-16. But hiring two women—Melka and her replacement—is not a pattern. The record shows that men were involved in the decision-making process to fill the PHS accountant position. *See Mills,* 171 F.3d at 455 (citing with approval a case in which sufficient background circumstances existed where a plaintiff was the only white employee in a department and nearly all of the decision-makers were Hispanic). Moore replaced Lochner with another man. Plaintiff is not aware of any other

instances of discrimination at UW-Madison or in the SMPH. Plaintiff has failed to produce evidence of background circumstances or anything "fishy" that demonstrates that defendant had some reason or inclination to discriminate against males.

Because plaintiff cannot show sufficient background circumstances evidencing an inference of discrimination, he cannot establish a prima facie case of reverse discrimination and, therefore, cannot survive summary judgment on his sex discrimination claim.

### 2. Pretext

Even if plaintiff's evidence was sufficient to establish the modified first element of his prima facie case, plaintiff's sex discrimination claim would still fail because he cannot rebut defendant's legitimate, non-discriminatory reason for its decision not to select plaintiff for the position. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000). "A 'pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." *Id.* at 684. If defendant honestly believed the reasons it gave for rejecting plaintiff, then he cannot establish pretext, even if defendant's reasons were mistaken, cruel, unethical, or downright irrational. *Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 418 (7th Cir. 2006).

Moore testified that she and other decision-makers rejected plaintiff because they believed that he could not succeed in the position, and that Melka was selected because she was the most qualified candidate for the position. Plaintiff presents no evidence to cast doubt on the legitimacy of defendant's proffered reason for its hiring decision and, in fact, he acknowledges that Moore truly believed that plaintiff would not succeed in the position. Instead, plaintiff argues that he was the better candidate based on nothing more than his own opinion, which is

14

insufficient to create an issue of fact. The Seventh Circuit has held that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook,* 280 F.3d at 1180 (internal quotations and citations omitted). Thus, "in effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.* at 1180-81 (internal quotations and citations omitted).

Applying this standard to the facts in this case, there is no basis to conclude that plaintiff's credentials were so superior to Melka's that no reasonable employer could have selected her for the position. Melka, like plaintiff, satisfied all of the "must-have" requirements for the position. Although plaintiff had advanced degrees and CPA certification, as well as experience in post-award grant management, plaintiff concedes that Moore honestly believed that he lacked the very attributes that were critical to success in the position—whereas Melka's interview and recommendations signaled the opposite. Plaintiff seems to argue that the OSER guidelines for accountants require professional training in accounting or auditing in the form of an advanced degree, but they do not state this by their plain language. Plaintiff cannot demonstrate that his credentials were clearly superior to Melka's.

Moreover, a court's role is to prevent unlawful employment practices, not to second-guess an employer's business decisions; a court "must respect the employer's unfettered discretion to choose among qualified candidates." *Id.* at 1181 (internal citation and quotation omitted); *see Guerro v. Ashcroft,* 253 F.3d 309, 314 (7th Cir. 2001) (holding that the court is

15

"not a super-personnel board . . . and that [it] may not punish an employer for choices that constitute business decisions alone"). Plaintiff may think it unfair, or even unwise, that defendant did not strictly focus on the accomplishments set forth in his resume, as he did have more years of education and experience than Melka, but he has not established that Moore and the other decision-makers did not actually take other factors into account or that these reasons were insufficient to motivate them when they selected Melka. *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000) ("Even if the reasons for [the plaintiff's] non-selection were mistaken, ill considered or foolish, so long as [the defendant] honestly believed those reasons, pretext has not been shown."); *see Gusewelle v. City of Wood River,* 374 F.3d 569, 575 (7th Cir. 2004) (stating that a plaintiff may establish that an employer's reason is unworthy of belief by showing that the proffered reasons are factually baseless, were not the actual motivation for the action, or were insufficient to motivate the action). Nor has plaintiff established that Moore did not believe that plaintiff's education and experience were less important than other attributes, skills, and experience he lacked because she could not teach those aspects of the job. Merely disagreeing with the employer's assessment of what was important for the job is not sufficient to establish pretext. Accordingly, defendant's motion for summary judgment as to plaintiff's Title VII sex discrimination claim is granted.

ORDER

IT IS ORDERED that:

1. Defendant Board of Regents of the University of Wisconsin System's motion for summary judgment, Dkt. 12, is GRANTED.

2. The clerk is ordered to enter judgment for defendants and close this case.

Entered December 24, 2014.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge